## O'Neil v. Brown, et al.

(Decided March 19, 1914.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch No. 1).

1.   Landlord and Tenant—Premises, Enjoyment and Use Thereof—Injuries from Dangerous or Defective Condition.—Where the landlord retains no control or possession of any portion of the premises leased, if his promise be merely to make general repairs or to maintain in good condition, then a notice that specific repairs are needed, given by the tenant to the landlord, is essential in order to enlarge the boundaries of natural consequences, and thereby to charge the landlord with responsibility for consequential damages occasioned by a breach of his contractual obligation.

2.  Landlord and Tenant—Creation and Existence of the Relation—
    Evidence as to Relation.—In an action for injuries resulting from
    the defective condition of premises let by verbal lease, evidence
    considered and held insufficient to establish a covenant to main-
    tain the premises in good condition.

O'DOHERTY & YONTS and HENRY W. SANDERS for appellant.

O'NEAL & O'NEAL for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

Elizabeth O'Neil sued Julia P. Brown and Patrick J.
Brown, her husband, in the Jefferson Circuit Court to
recover damages for injuries claimed to have been re-
ceived by her as the result of the falling of the stairs
leading from the basement to the first floor of a house
which the said plaintiff had rented from the defendants
by verbal lease, the plaintiff alleging that the defendants
agreed and bound themselves by the terms of said verbal
lease to keep and maintain the premises in good condi-
tion of repair, and that they negligently permitted the
stairs to become and remain in an unsafe condition,
thereby causing her injuries.

Upon a trial of the action, the court directed a verdict
for the defendants upon the ground that the plaintiff
failed to prove a contract to keep and maintain the prem-
ises in good condition of repair; and plaintiff appeals.

It appears from the record that after plaintiff and
the physician who attended her, had testified, the court
indicated that a verdict would be directed for the defend-
ants upon the ground above stated; and that thereupon
the court together with the plaintiff and the attorneys
for the respective parties repaired to the chambers of
the judge, and there the following testimony was given
by plaintiff:

"Q. (By the Court.) In answer to the questions of
the lawyers, did you say all that was said between you
and Mrs. Brown when you rented the property? A. Yes,
sir; she said to me when I went to rent the property that
she wanted ten dollars for it. I told her I felt like I
could not pay ten dollars. She said, Well, I cannot let
the house go under ten dollars. We keep our property
in such good repair that I could not afford to let it go
under ten dollars. I said, Mrs. Brown, you know
your rent would be good. She said that she could not
let it go under ten dollars. I said, Very well, I will take
it at ten dollars. Q. (By the Court.) All that was said

about keeping the property in repair was that she kept it in such repair that they could not let it go under ten dollars? A. She kept it in such good repair that she could not let it go under ten dollars.''

Thereupon, plaintiff's attorney offered to ask her this question: ''Did or not Mrs. Brown, at the time you made the contract with her for this property, agree and promise to keep this property in repair during the time you had it?'' And this question the court refused to permit plaintiff to answer, and properly so. The question calls for the conclusion of the witness.

On her examination in chief, before the jury, the plaintiff was asked this question: ''Was or not there any agreement between you with relation to repairs upon the property while you lived in it?'' The plaintiff answered: ''Yes, sir, she said she would keep the property in good repair.'' This question likewise was improper because it calls for the conclusion of the witness, rather than for the words of the conversation had at the time the verbal lease was claimed to have been affected; and its effect in that respect is demonstrated when we examine the answers made on the examination by the court, where the plaintiff repeated all of the conversation in question.

The court is of opinion that, considered as a whole, the testimony of the plaintiff was insufficient to establish a covenant to maintain the premises in repair, and that the court properly directed a verdict for defendants upon that ground.

However, even if it be conceded that there was a contract to repair, still the plaintiff failed to make out a case.

2. Except in the event of fraudulent concealment of unsafe or unsanitary condition of the premises leased, existing at the time the lease is effected, the landlord who transfers the entire possession and control of the property to the tenant is not responsible for defects therein. The law imposes upon the landlord no duty to maintain in good condition, premises leased by him to a tenant who has the entire possession and control thereof.

And, if the landlord covenants to make repairs, he undertakes to perform that which is not a duty imposed by law. The obligation assumed is, therefore, purely contractual, and an action of this character is based, not upon negligence, but upon breach of contract. The rule governing such actions is that originally announced in

the leading case of Hadley v. Baxendale, 26 Eng. L. & Eq., 398, as follows:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things from said breach of the contract itself, or, such as may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract, as the probable result of a breach of it."

Of course, in such cases, the boundaries of natural consequences may be enlarged by the fact of notice, and for the natural and proximate consequences of the facts made known, there may be a recovery. But, in the case at bar, there is no proof of notice given by the tenant to the landlord of the fact that the said stairs were in an unsafe condition, so that, even conceding that there was a contract to repair, in the absence of notice of the defect, the defendants cannot be held answerable for consequential damages for a breach of the contract, resulting from the falling of the stairs in question.

There is no question of negligence here involved. The duty of the landlord to repair, if such there was, is a duty not imposed by law, but undertaken, if at all, by voluntary contract. And the proper rule applicable to cases of this character is that where the landlord retains no control or possession of any portion of the premises, if his promise be merely to make general repairs or to maintain in good condition, then a notice that specific repairs are needed, given by the tenant to the landlord, is essential in order to enlarge the boundaries of natural consequences, and thereby to charge the landlord with responsibility for consequential damages occasioned by a breach of his contractual obligation.

Judgment affirmed.